UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Lisa Ann Akner,

    Plaintiff,

v.                                                   Case No. 18-13974

Commissioner of Social Security        Sean F. Cox
Administration,                        United States District Court Judge

    Defendant.
_____/

## **OPINION AND ORDER**

Plaintiff applied for, and was denied, social security benefits. She then went before an administrative law judge ("ALJ"), who likewise issued an unfavorable decision. After the Appeals Council denied her request for review, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration.

Plaintiff now seeks judicial review of the ALJ's decision. She raises three arguments for why the decision cannot stand: (1) the ALJ failed to articulate why she did not place Plaintiff into a higher age category when Plaintiff would have been in that category in a few short months; (2) the ALJ failed to properly account for a consultative examiner's opinion regarding manipulative limitations in her hands; and (3) the ALJ's appointment was unconstitutional.

For the reasons below, the Court will deny Plaintiff's motion for summary judgment, grant Defendant's motion for summary judgment, and affirm the Commissioner's decision.

**BACKGROUND**

On June 24, 2015, Plaintiff Lisa Ann Akner protectively filed for disability insurance benefits and supplemental security income. (Tr. 268, 287).[1] Akner alleged a disability that began on June 3, 2015 for both applications. On August 9, 2016, the Social Security Administration initially denied her claims. Akner filed a request for a hearing, and appeared before an ALJ, with counsel, on December 1, 2017. At the hearing, the ALJ questioned Akner and heard testimony from a vocational expert. The ALJ also reviewed Akner's medical records, including a report from a Social Security Administration consultative physician, Dr. Lasmi Manyam.

On July 5, 2018, the ALJ issued her written decision. (Tr. 10-27). Under the five-step evaluation process for determining whether a claimant is disabled, the ALJ determined that (1) after the alleged disability onset date, there was a continuous 12-month period during which Akner did not engage in substantial gainful employment; (2) Akner had severe impairments (including fibromyalgia, thrombocytopenic disorder, hypertension osteoarthritis of the right thumb IP joint, leviscoliosis of lower lumbar spine, and combined mental health impairments of depression and anxiety) that significantly limited her ability to perform basic work activities; (3) these impairments or a combination of these impairments **did not** meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1; (4) Akner had a residual functional capacity ("RFC") to perform light work, with the following additional limitations: (a) can only occasionally climb stairs/ramps, stoop, kneel, crouch or crawl, (b) never climb ladders, ropes, or scaffolds, (c) can frequently handle and finger, (d) is limited to simple and routine tasks, and (e) may need the ability to change positions between sitting and standing every

---

[1] All record citations refer to the Transcript of the Social Security proceedings. (ECF No. 11).

30 to 60 minutes but would remain on task; (5) Akner was unable to perform any of her relevant past work; and (6) considering Akner's age, education, work experience, and residual functional capacity, there were a significant number of jobs in the national economy that she could perform. Accordingly, the ALJ concluded that Akner "has not been under a disability, as defined in the Social Security Act, from June 3, 2015, through the date of this decision." (ECF No. 11-2, PageID 77). At the time of this decision, Akner was two months shy of her 55th birthday.

On November 1, 2018, the Appeals Council denied Akner's request to review the ALJ's decision. Notably, the Council stated that it "considered the borderline age situation in this case and found that the factors in the record do not support application of the higher age category." (Tr. 1). The ALJ's decision became the final decision of the Commissioner of Social Security.

On December 20, 2018, Akner filed this action for judicial review of the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c) (3). On June 24, 2019, she filed her motion for summary judgment. (ECF No. 13). On September 11, 2019, the Commissioner filed its own motion for summary judgment. (ECF No. 17). On September 24, 2019, Akner filed a reply. (ECF No. 18). This case is ripe for the Court's decision.[2]

## ANALYSIS

**I.    Standard of Review**

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

---

[2] The Court previously referred this case to Magistrate Judge Anthony P. Patti for a report and recommendation, but that referral was vacated on January 28, 2020. (ECF No. 19).

3

(quotations omitted); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...."). Under this standard, "substantial evidence is defined as more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

"Although the substantial evidence standard is deferential, it is not trivial." *Kuzava v. Comm'r of Soc. Sec.*, 2020 WL 814400 at *3 (E.D. Mich. Jan. 24, 2020), *report and recommendation adopted*, *Kuzava v. Berryhill*, 2020 WL 806192 (E.D. Mich. Feb. 18, 2020). The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the [Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651. (quotations omitted).

## II. Akner's Arguments and the Commissioner's Responses

In Akner's motion for summary judgment, she raises three arguments: (1) the ALJ should have explained why she was not considered a "person of advanced age" even though she turned 55 years-old only two months after the decision; (2) the ALJ failed to properly account for Dr. Manyam's opinion regarding manipulative limitations in her hands; and (3) the ALJ's appointment was unconstitutional in light of the Supreme Court's decision in *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018). The Commissioner contends that Akner's arguments are meritless because (1) the ALJ had no legal obligation to explain why she declined to place Akner into an age category that was inconsistent with her chronological age; (2) the ALJ's residual functional capacity properly accounted for Dr. Manyam's conclusions, and the ALJ had no obligation to explain why those conclusions were not given more weight; and (3) Akner forfeited her *Lucia* challenge by failing to raise it at the administrative level. The Commissioner has the better of all these arguments.

### A. Borderline Age Categories

When considering whether a person is disabled under the Social Security Act, the Commissioner considers (among other factors) the claimant's age. 20 C.F.R. § 404.1563(a). Claimants are divided into three age categories: (1) a claimant under 50 years-old is considered a "younger person;" (2) a claimant between 50 and 55 years-old is considered a "person closely approaching advanced age;" and (3) a claimant over 55 years-old is considered "a person of advanced age." 20 C.F.R. § 404.1563)-(e).

The Commissioner considers the impact of the claimant's age depending on which category applies. For a "younger person," the Commissioner "generally does not consider" that their age "will seriously affect [their] ability to adjust to other work." 20 C.F.R. § 404.1563(c).

But the Commissioner does consider age to "significantly affect a person's ability to adjust to other work" if that person is of advanced age. And (not surprisingly) the effect of the age of a "person closely approaching advanced age" falls somewhere between those two generalizations; for those people, the Commissioner "consider[s] that [their] age along with a severe impairment(s) and limited work experience may seriously affect [their] ability to adjust to other work." 20 C.F.R. § 404.1563(d).

These age categories are not bright-line rules. "If [the claimant is] within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled, [the Commissioner] will consider whether to use the older age category after evaluating the overall impact of all the factors of [the] case." 20 C.F.R. § 404.1563(b). The Commissioner has also promulgated internal manuals that provide more specific guidance to ALJs on how to handle cases where the claimant almost qualifies for a higher age category. *See, e.g.*, Program Operations Manual System ("POMS") DI 25015.006; Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-2-2-42. And these manuals require ALJs to explain why they did or did not apply the higher age category in borderline-age cases. POMS DI 25015.006(G) ("Document how you considered borderline age whether you allow or deny the claim: [e]xplain your decision to use the next higher age category or your decision to use the claimant's chronological age, including the case-specific supporting factors."); HALLEX I-2-2-42(C)(5) ("The ALJ will explain in the decision that he or she considered the borderline age situation, state whether he or she applied the higher age category or the chronological age, and note the specific factor(s) he or she considered.")

Akner argues that she presents a borderline age case. Nobody disputes that, at the time of the ALJ's decision, the 54-year-old Akner was a "person closely approaching advanced age."[3] However, Akner contends that, because she would turn 55 years-old in roughly two months, the ALJ should have placed her in the "person of advanced age" category or—at the very least— explained why she was not placed in that higher category. By failing to provide such an explanation, Akner believes that the ALJ violated the Commissioner's policy, as articulated in POMS DI 25015.006(C) and HALLEX I-2-2-42(C)(5).

In response, the Commissioner argues that Akner relies on internal manuals while overlooking binding Sixth Circuit precedent. (ECF No. 17, PageID 1206-1207) (citing *Crady v. Sec'y of Health & Human Servs.*, 835 F.2d 617 (6th Cir. 1987) and *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008)). The Commissioner contends that courts have consistently held that ALJs need not explain their age-category decisions in borderline cases, and that Akner has not established that the application of the higher category would have been appropriate in this case.

In reply, Akner concedes that "failure to provide any explanation in a borderline age case for applying a higher grid rule does not require remand *per se*." (ECF No. 18, PageID 1231). But, she argues, "the significant array of non-exertional limitations which the ALJ herself found to be

---

[3] In the ALJ's written decision, she correctly stated Akner's birthdate, but mistakenly stated that Akner was "a younger individual age 18-49." This appears to be a scrivener's error, which Akner only mentions in passing. (ECF No. 13, PageID 1103). Akner does not argue that the ALJ actually considered her to be a "younger person," or that such a consideration influenced the disposition of her case. Rather, her argument centers on the ALJ's failure to recognize that her age was on the borderline between being considered "a person closely approaching advanced age" and "a person of advanced age," and the ALJ's failure to explain why she was not placed in the higher category.

7

present in combination in this case (especially the sit/stand option) means that the ALJ should have provided an explicit analysis." *Id*.

In *Bowie*, the Sixth Circuit concluded that 20 C.F.R. § 1563(b) "does not impose on ALJs a *per se* procedural requirement to address borderline age categorization in every borderline case." *Bowie*, 539 F.3d at 399. But the Sixth Circuit continued that:

> [a]lthough an ALJ does not have a procedural obligation to address a claimant's borderline age situation in his opinion or explain his reasons for arriving at a particular age categorization, lack of an explanation may in some cases mean that the ALJ's ultimate decision is not supported by sufficient evidence.

*Id*. at 400-401. The *Bowie* court then provided an example of an instance where substantial evidence "might be lacking:"

> For example, substantial evidence might be lacking where an ALJ, with no explanation, places a claimant in the "younger individual" category who is 49 years and 11 months, unskilled, sedentary, barely literate, and whose only previous work experience was in the fishing industry. See Rule 201.18, App. 2 to Subpart P of 20 C.F.R § 404; HALLEX II-5-3-2. In that situation, the claimant's additional vocational adversities would be significant and would merit some discussion of proper age categorization in order to meet the substantial evidence threshold.

*Id*. at 401. ("the *Bowie* example").

Thus, the *Bowie* court unambiguously held that ALJs are not required to explain their borderline age determination but, in dicta, left the door open for the possibility that the lack of an explanation in some cases could doom the ALJ's decision. *See Caudill v. Comm'r Soc. Sec.*, 424 Fed.App'x 510, 517 (6th Cir. 2011) (describing Bowie's holding and referring to the *Bowie* example as "dicta")). Courts confronted with the argument that a borderline-age case requires an explanation typically compare it to the *Bowie* example. *See, e.g., Henry v. Colvin*, 2016 WL 1171531 at *8 (E.D. Ky. 2016) ("The *Bowie* example is the benchmark by which courts should

8

analyze whether significant enough additional vocational adversities exist to warrant discussion of a claimant's borderline age by an ALJ.")

Akner's case is not like the *Bowie* example. Akner is limited to light, not sedentary, work. She can effectively communicate in English. She is not only literate but also has at least a high school education. (Tr. 23). In fact, at the administrative hearing, Akner testified that she had a college degree. (Tr. 43). Her previous employment was semi-skilled. (Tr. 22). And although Akner worked primarily as a security/corrections officer, her job history is far from isolated; she's been a janitor, a salesperson, and a carpet cleaner. *Id*. Thus, the Court concludes that this case is not one where the ALJ's decision lacks substantial evidence because she failed to explain her age-category determination. *See also Caudill*, 424 Fed.App'x at 518 (concluding that, under *Bowie*, no explanation was necessary where the claimant was able to perform light work and was more than "barely literate"); *Johnson v. Berryhill*, 2019 WL 2606836 at *18 (E.D. Tenn. 2019) (no explanation necessary where claimant could communicate in English, had a high school education, and could perform a modified range of unskilled light work); *Henry*, 2016 WL 1171531 at *9 (no explanation necessary where the claimant has able to perform light work with added restrictions, had previously performed semi-skilled work, and was "undoubtedly literate."); *Ramsey v. Comm'r of Soc. Sec*., 2018 WL 727547 at *8 (M.D. Tenn. 2016) (no explanation necessary where claimant could perform "a limited range of light work" and had "past relevant work that included semiskilled jobs.")

Rather, this case "is controlled by *Bowie*'s holding instead of its dicta." *Caudill*, 424 Fed.App'x at 517. Moreover, "the fact that age categories are not to be applied mechanically, [ ] obviously does not mean that a claimant must be moved mechanically to the next age category

9

whenever her chronological age is close to that category." *Van der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 528 (6th Cir. 2006).

Akner is correct that *Bowie*'s holding that ALJs are not obligated to explain their borderline age determinations is in tension with POMS DI 25015.006(C) and HALLEX I-2-2-42(C)(5). However, POMS and HALLEX are internal manuals, which "do[] not impose judicially enforceable duties on either this court or the ALJ." *Lockwood v. Comm'r Soc. Sec.*, 616 F.3d 1068, 1073 (9th Cir. 2010); *see also Gilliam v. Comm'r Soc. Sec.*, 2015 WL 3580502 at *23 (E.D. Mich. 2015); *Estep v. Astrue*, 2013 WL 212643 at *11 (M.D. Tenn. 2013) (collecting cases).

Recognizing this problem, Akner alleges that the Social Security Administration recently issued SSR 13-2p, a ruling that "make[s] it perfectly clear that ALJs are in fact bound by the POMS and the HALLEX." (ECF No. 18, PageID 1229). However, "SSR 13-2p is a policy ruling clarifying how the [Administration] determines whether drug addiction is a contributing factor material to the determination of disability." *Kathleen S. v. Saul*, 2020 WL 353602, at *7 (S.D. Cal. Jan. 21, 2020) (citation and quotation marks omitted). Courts have consistently rejected Akner's elephant-in-a-mousehole argument that SSR 13-2p established or expanded the enforceability of POMS or HALLEX in a judicial proceeding. *See Jeanne E v. Saul*, 2020 WL 602279 at *6 (D. Or. Feb. 7, 2020) (collecting cases). When confronted with the tension between *Bowie* and POMS and HALLEX, this Court must give effect to the binding Sixth Circuit authority that interprets agency regulations (*Bowie*), not the agency's internal manuals (POMS and HALLEX).[4]

---

[4] The Court also notes that the Appeals Council considered Akner's borderline-age argument and concluded that Akner should not have been placed in the higher age category. (Tr. 1). The Appeals Council appears to have acted consistent with HALLEX I-3-3-25(B)(1), which outlines its procedure for "when denying review is appropriate but the ALJ did not expressly state in the decision that he or she considered a borderline age situation and whether to apply a higher age

10

In sum, Akner has not presented a persuasive reason to remand to the ALJ for an explanation regarding the borderline age issue.

B.   Dr. Manyam's Opinion and the ALJ's Conclusion

On June 17, 2016, Akner was evaluated by one of the Social Security Administration's consultative examiners, Dr. Lasmi Manyam. (Tr. 571-579). Dr. Manyam had the following "impressions:"

1. Large joint pain and tenderness of the joints and muscle pain and burning sensation, possible fibromyalgia

2. Arthritis of the right and left hands with some dislocation of the right metacarpophalangeal joints of the right hand as swollen and tender. Range of motion is limited. There is some limitation of the joint movements in the right hand secondary to pain and swelling of the second and third fingers. Tinel's and Phalen's tests are negative.

3. Hypertension, not well controlled. No strokes or seizures. Her blood pressure is elevated.

4. Arthritis of the joints.

5. Anxiety and depression.

(Tr. 573). Dr. Manyam made several specific observations related to Akner's hands:

> Fine and gross dexterity is intact. Grip in the right hand is decreased due to the pain and swelling of the second and third fingers of the right hand and also dislocation of the thumb with severe pain. No tingling or sensory changes of the right hand. There is some pain but no limitation of range of motion. There is swelling of the second and third metacarpophalangeal joint and the patient states she feels burning sensation. She is going to have surgery done soon. Left hand: No swelling. Range of motion is normal. Left wrist range of motion is normal.

---

category." Thus, even the Administration's internal manuals provide for situations where the ALJ fails to explicitly address borderline-age situations.

*Id*. Dr. Manyam recorded that Akner was able to exert 38 pounds of pressure with her left hand, but was unable to exert any pressure with her right hand. (Tr. 578).

The ALJ discussed Dr. Manyam's report in her decision:

In June 2016, the claimant presented for an internal medicine consultative exam. Her stance and gait were noted to be normal, with some swelling of the right hand. Range of motion remained normal, although the claimant reported pain with range of motion of the cervical spine. The claimant has complained of trouble in her hands and feet elsewhere in the medical evidence of record, although there is no formal diagnosis anywhere in the medical evidence of record. Even so, the undersigned has accounted for these symptoms in the residual functional capacity.

(Tr. 21). The ALJ then cited to Dr. Manyam's report. *Id*.

In Akner's motion for summary judgment, she argues that the ALJ committed legal error by "barely mention[ing] [Dr. Manyam's] consultative report in her decision, fail[ing] to discuss many of the specific functional limitations identified therein, and then never explain[ing] what weight she accord[ed] to that opinion." (ECF No. 13, PageID 1107). Specifically, Akner contends that the ALJ's conclusion that she can "frequently handle and finger," is incompatible with Dr. Manyam's observations about her hands, and that the ALJ ignored all indications that she suffered more significant manipulative limitations in her right hand compared to her left hand.

In response, the Commissioner argues that (1) the ALJ did not need to give good reasons for the weight given to Dr. Manyam's report because she was a non-treating source; (2) the ALJ imposed manipulative limitations by limiting Akner to frequent handling and fingering, rather than constant handling and fingering; and (3) the ALJ's RFC adequately addressed Dr. Manyam's report.

In reply, Akner accuses the Commissioner of intentionally misleading the Court and advancing frivolous arguments. Akner's counsel asserts that "[a]s a former longtime disability

litigator for SSA, [he] is stunned that [the Commissioner] on appeal would even attempt to assert its current litigation position." (ECF No. 18, PageID 1233).

In evaluating a claimant's case, the ALJ must consider all medical opinions that she receives. 20 C.F.R. § 416.927(c). Medical opinions include any "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [their] symptoms, diagnosis and prognosis, what [they] can still do despite impairment(s), and [their] physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Here, Dr. Manyam is a nontreating source. *See Smith v. Comm'r of Social Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) ("A 'nontreating source' (but examining source) has examined the [plaintiff] 'but does not have, or did not have, an ongoing treatment relationship with' her.") (citing 20 C.F.R. § 404.1502). Although an examining source's opinion is generally entitled to greater weight than the opinion of a non-examining source, 20 C.F.R. § 416.927(c)(1), an ALJ may reject an opinion if it is inconsistent with the record evidence. 20 C.F.R. § 416.927(c)(4); *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010).

Commissioner also reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of [the claimant's] impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass*, 499 F.3d at 511.

To begin, the Commissioner is correct that the oft-cited "good reasons" requirement only applies to treating sources, not examining sources like Dr. Manyam. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) ("[A]n ALJ is procedurally required to 'give good reasons

in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion.' However, this requirement only applies to *treating* sources.") (internal citations omitted) (emphasis in original).

Moreover, Akner appears wrong that the ALJ "imposed almost no manipulative limitations of any kind in her RFC finding:" in fact, she limited Akner to frequent handling and fingering, instead of constant handling and fingering. This limitation is consistent with Dr. Manyam's observation that Akner's "fine and gross dexterity is intact" in her hands. (ECF No. 11-8, PageID 632). And the ALJ's limitation of Akner to "light work" appears to have accounted for her reduced hand strength. *See* 20 C.F.R. § 404.1567(b) (defining "light work" as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.") As for the ALJ'S failure to specifically account for Dr. Manyam's observation that Akner's strength in her right hand was significantly lower than the strength in her left hand, this disparity appears to be an anomaly, not mentioned in any of the other medical records that the parties cite to the Court.

In sum, the record supports the conclusion that the ALJ's RFC considers, and appropriately accounts for, the symptoms observed by Dr. Manyam during her June 17, 2016 consultation with Akner. Accordingly, the Court finds that Akner's argument is meritless and that remand is not appropriate on this issue.

### C. *Lucia* Challenge

In *Lucia*, the Supreme Court held that ALJs employed by the Securities and Exchange Commission qualify as "officers of the United States," and, as such, must be appointed in a matter consistent with the Appointments Clause of the United States Constitution, Art. II, § 2, cl. 2. *Lucia*,

14

138 S. Ct. at 2053. To comply with the Appointments Clause, the officer must have been appointed by "the President, a court of law, or a head of department." *Id*. at 2051.

Akner argues that, because the ALJ who presided over her case was not appointed consistent with the Appointments Clause, her case should be remanded to be considered anew by a properly appointed ALJ. The Commissioner does not dispute that—at the time of her decision in Akner's case—the ALJ had not been appointed consistent with the Appointments Clause.[5] Instead, the Commissioner only argues that Akner has forfeited her *Lucia* challenge because she did not raise it at any point during her administrative proceedings.

At first glance, *Lucia* appears broad and applicable to the Social Security Administration's ALJs. But *Lucia* comes with an important limitation: in order to be entitled to relief, Akner's challenge to the ALJ's appointment must have been "timely." *See Lucia*, 138 S.Ct. at 2055. ("'[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief.") (quoting *Ryder v. United States*, 515 U.S. 177, 182-183 (1995)). Thus, the issue is whether Akner's failure to raise this challenge at any time in her administrative proceedings bars her from raising it in this action for judicial review.

This issue is not novel, and many courts around the country and in this district have examined it repeatedly since the Supreme Court handed down *Lucia*. For example, in *Fortin v. Comm'r of Soc. Sec.*, 372 F.Supp.3d 558 (E.D. Mich. 2019), the magistrate judge recommended

---

[5] The timeline is important. The Supreme Court issued *Lucia* on June 21, 2018. Akner's ALJ issued her unfavorable decision on July 5, 2018. Eleven days later, the Acting Commissioner ratified the appointment of the Social Security Administration's ALJs, making their appointment compliant with *Lucia* and the Appointments Clause. Thus, it appears that Akner is making this *Lucia* challenge only because the ALJ adjudicated her case *before* the Acting Commissioner ratified her appointment. There is no argument that the ALJ's appointment is currently unconstitutional.

15

that Judge David M. Lawson remand a social security case to the Administration based on a *Lucia* challenge that had not been raised at the administrative level, concluding that "general waiver and forfeiture principles do not apply to Social Security cases at the administrative level." *Id*. at 563.

Judge Lawson disagreed. Recognizing that a bedrock principle of administrative law is "that orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts," *Id*. (quoting *United States v. L.A. Tucker Truck Lines, Inc*., 344 U.S. 33, 37 (1952)), Judge Lawson sided with the overwhelming majority of district courts that have concluded that Social Security claimants must raise and exhaust Appointments Clause challenges at the administrative level before seeking judicial review. *Id*. at 567 (collecting cases).

The Court agrees with Judge Lawson's in-depth analysis of this issue, *see Fortin*, 372 F.Supp.3d at 562-567, and joins the chorus of district courts that have concluded that these types of challenges are forfeited if they are not first raised at the administrative level. Not only is this the conclusion that most courts around the country have reached, courts in this district appear to have reached it almost uniformly. *See Johnson v. Comm'r Soc. Sec*., 2020 WL 1129958 at *3 (E.D. Mich. Mar. 9, 2020) (Levy, J.); *McPherson v. Comm'r of Soc. Sec*., 2019 WL 3934450 at *8 (E.D. Mich. 2019) (Patti, M.J.), *report and recommendation adopted by McPherson v. Berryhill*, 2019 WL 3892587 (E.D. Mich. 2019); *Fortin*, 372 F.Supp.3d at 565 (Lawson, J.); *Shoops v. Comm'r Soc. Sec*., 2019 WL 1417164 at *2 (E.D. Mich. 2019) (Edmonds, J.); *Hutchins v. Berryhill*, 376 F.Supp.3d 775, 779 (E.D. Mich. 2019) (Cleland, J.); *Page v. Comm'r Soc. Sec*., 344 F.Supp.3d 902, 904 (E.D. Mich. 2018) (Whalen, M.J.); *Gothard v. Comm'r of Soc. Sec.*, 2018 WL 7254254

at *15 (E.D. Mich. 2018) (Morris, M.J.), *report and recommendation adopted by Gothard v. Comm'r of Soc. Sec.*, 2019 WL 396785 (E.D. Mich. 2019).[6]

Akner attempts to sidestep this conclusion by referencing SSR 19-1p, which she believes excuses her from raising a *Lucia* challenge before the ALJ. However, SSR 19-1p only applies to challenges that were timely raised before the Appeals Council or previously raised before an ALJ. *See* SSR 19-1p; Titles II and XVI: Effect of the Decision in Lucia v. Securities and Exchange Commission (SEC) on Cases Pending at the Appeals Council, 84 FR 9582-02, 2019 WL 1202036 (March 15, 2019). In other words, for SSR 19-p to apply, Akner still must have raised her *Lucia* challenge *at some point* in the administrative proceedings. Akner did not and SSR 19-1p is therefore inapplicable here.

In sum, the Court concludes that Akner forfeited her right to challenge the appointment of the ALJ who presided over her case because she did not raise her Appointments Clause objection during the administrative proceedings. Remand on this issue is not appropriate.

## CONCLUSION

For these reasons, the Court **DENIES** Plaintiff's motion for summary judgment (ECF No. 13); **GRANTS** Defendant's motion for summary judgment (ECF No. 17); and **AFFIRMS** the Commissioner's decision.

**IT IS SO ORDERED.**

---

[6] Akner's various arguments about why traditional waiver principles do not or should not apply in these types of cases (i.e. that social security proceedings are non-adversarial, that the Supreme Court's decision in *Sims v. Apfel*, 530 U.S. 103 (2000) (holding that claimants need not raise an evidentiary issue before the Appeals Council to preserve it for judicial review) should apply, and that the ALJs lack authority to adjudicate their own constitutionality) are repeatedly raised and rejected in these decisions. The Court finds the reasoning of these decisions to be persuasive and similarly rejects Akner's arguments. *See, e.g. Fortin*, 372 F.Supp.3d at 563-568.

s/Sean F. Cox
                                                                Sean F. Cox
                                                                United States District Judge

Dated: March 25, 2020